**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MARIA CUELLAR, and EMMA** | § | CIVIL ACTION NO. 4:19-cv-00922 |
| **STEWART,** *on behalf of themselves* | § | |
| *and others similarly situated*, | § | CLASS ACTION COMPLAINT |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| **v.** | § | Jury Trial Demanded |
| | § | |
| **ALLIED INTERSTATE, LLC** | § | |
| | § | |
| *Defendant.* | § | |

---

**MEMORANDUM IN SUPPORT OF**
**DEFENDANT ALLIED INTERSTATE, LLC'S**
**MOTION TO STRIKE CLASS ALLEGATIONS**

---

## TABLE OF CONTENTS

**Page**

I.      NATURE AND STAGE OF PROCEEDINGS ................................................. 1

II.     STATEMENT OF THE ISSUES ..................................................................... 1

III.    SUMMARY OF THE ARGUMENT ............................................................... 1

IV.     PLAINTIFFS' ALLEGATIONS ...................................................................... 4

V.      ARGUMENT ................................................................................................... 5

    A.      Legal Standard .................................................................................... 5

    B.      Plaintiffs Pleaded Class Definitions Facially Do Not Satisfy the
          Requirements of Rule 23(b) .................................................................. 7

          1.      Common Issues of Fact Cannot Predominate the Putative Classes
                  Because Whether a Called Party Revoked Consent is an
                  Individualized, Fact-Intensive Inquiry ...................................... 8

                  a.      The TCPA Class ................................................................ 9

                  b.      The FDCPA Class ............................................................ 14

          2.      Neither the TCPA Class nor the FDCPA Class Can Be Certified
                  Under Rule 23(b)(2), Because the Primary Relief Sought is
                  Damages ..................................................................................... 16

          3.      Certification under Rule 23(b)(1) is Likewise Improper, Because
                  Plaintiffs' Claims for Damages Do Not Impact the Claims of
                  Others ........................................................................................ 18

    C.      The Court Should Not Wait Until the Certification Stage to Address These
          Issues ................................................................................................... 19

VI.     CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama Farm Bureau Mut. Casualty Co. v. American Fidelity Life Ins. Co.*,
606 F.2d 602 (5th Cir. 1979) ......................................................................6

*Allison v. Citgo Petroleum Corp.*,
151 F.3d 402 (5th Cir. 1998) ...........................................................3, 16, 17

*Amchem Prods v. Windsor*,
521 U.S. 591 (1997).................................................................................8, 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2006)......................................................................................6

*Buchholz v. Valarity, LLC*,
No. 4:13-cv-0362 TIA, 2015 U.S. Dist. LEXIS 16490 (E.D. Mo. Feb. 11,
2015) .....................................................................................................10, 11

*Casa Orlando Apts., Ltd. v. Fannie Mae*,
624 F.3d 185 (5th Cir. 2010) .....................................................................19

*Castano v. American Tobacco Co*.,
84 F.3d 734 (5th Cir. 1996) .........................................................................8

*Cholly v. Uptain Grp., Inc.*,
No. 15 C 5030, 2017 U.S. Dist. LEXIS 14449 (N.D. Ill. Feb. 1, 2017)..................12

*Connelly v. Hilton Grand Vacations Co., LLC*,
294 F.R.D. 574 (S.D. Cal. 2013) ...............................................................17

*Conrad v. GMAC*,
283 F.R.D. 326 (N.D. Tex. 2012) ..............................................................18

*Corley v. Entergy Corp.*,
222 F.R.D. 316 (E.D. Tex. 2004)...............................................................19

*Gen. Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)................................................................................5, 20

*Gene & Gene LLC v. BioPay LLC*,
541 F.3d 318 (5th Cir. 2008) ..................................................................9, 13

*Herrera v. First Nat'l Bank of Omaha*,
No. 2:17-cv-01136-RSWL-SKA, 2017 U.S. Dist. LEXIS 200103 (C.D. Cal.
Dec. 4, 2017)........................................................................................10, 11

*Hicks v. Client Servs.*,
   No. 07-61822, 2008 U.S. Dist. LEXIS 101129 (S.D. Fla. Dec. 10, 2008) .............................18

*Jara v. GC Servs.*,
   No. 2:17-cv-04598-ODW-RAO, 2018 U.S. Dist. LEXIS 83522 (C.D. Cal.
   May 17, 2018) ..................................................................................................................14

*John v. Nat'l Sec. Fire & Cas. Co.*,
   501 F.3d 443 (5th Cir. 2007) .........................................................................................5, 13

*Johnston v. USAA Fed. Sav. Bank*,
   No. 12-CV-02486-LTB-KLM, 2014 U.S. Dist. LEXIS 152408 (D. Colo.
   2014) ..........................................................................................................................10, 11

*Lee v. Credit Mgmt., LP*,
   846 F. Supp. 2d 716 (S.D. Tex. 2011) ...........................................................................3, 15

*Martinez v. Scott*,
   No. H-10-1619, 2011 U.S. Dist. LEXIS 90630 (S.D. Tex. Aug. 12, 2011) ...........................18

*McCurley v. Royal Seas Cruises, Inc.*,
   No. 17-cv-00986-BAS-AGS, 2019 U.S. Dist. LEXIS 52173 (S.D. Cal. Mar.
   27, 2019) .........................................................................................................................17

*Medley v. Dish Network*,
   Case No. 8:16-cv-2534, 2018 U.S. Dist. LEXIS 144895 (M.D. Fla. August 27,
   2018) ...............................................................................................................................11

*Michel v. Credit Prot. Ass'n L.P.*,
   No. 14-cv-8452, 2017 U.S. Dist. LEXIS 134767 (N.D. Ill. Aug. 23, 2017) ...........................11

*O'Donovan v. Cashcall, Inc.*,
   278 F.R.D. 479 (N.D. Cal. 2011)..................................................................................15, 16

*In re Oil Spill*,
   295 F.R.D. 112 (E.D. La. 2013)..........................................................................................7

*Reedy v. Phillips 66 Co.*,
   No. H-17-2914, 2018 U.S. Dist. LEXIS 45231 (S.D. Tex. Mar. 20, 2018) ...........................6

*Reyes v. Lincoln Auto. Fin. Servs.*,
   861 F.3d 51 (2d Cir. 2017)...............................................................................................11

*Rosa v. Am. Water Heater Co.*,
   177 F. Supp. 3d 1025 (S.D. Tex. 2016) ...............................................................................6

*In re Runyan*,
   530 B.R. 801 (M.D. Fla. 2015) .........................................................................................10

*Satterfield v. Simon & Schuster, Inc.,*
    569 F.3d 946 (9th Cir. 2009) ................................................................10

*Saulsberry v. Meridian Fin. Servs., Inc.,*
    No. CV 14-6256 JGB, 2016 U.S. Dist. LEXIS 86419(C.D. Cal. April 14,
    2016) ....................................................................................................12

*Shular v. LVNV Funding LLC,*
    No. H-14-3053, 2016 U.S. Dist. LEXIS 19510 (S.D. Tex. Feb. 18, 2016) ........................8, 13

*Sibley v. Diversified Collection Servs.,*
    No. 3:96-CV-0816-D, 1998 U.S. Dist. LEXIS 9969 (N.D. Tex. June 30, 1998) ...................18

*Singer v. Las Vegas Ath. Clubs,*
    No. 2:17-cv-01115-GMN-VCF, 2019 U.S. Dist. LEXIS 48838 (D. Nev. Mar.
    25, 2019) ..............................................................................................10

*Solomon v. Lincoln Nat'l Corp.,*
    No. 4:15-CV-02340, 2015 U.S. Dist. LEXIS 182869 (S.D. Tex. Nov. 12,
    2015) ......................................................................................................6

*Van Patten v. Vertical Fitness Grp., LLC,*
    847 F.3d 1037 (9th Cir. 2017) ...............................................................10

*Villagran v. Cent. Ford, Inc.,*
    No. H-05-2685, 2006 U.S. Dist. LEXIS 84148 (S.D. Tex. Nov. 20, 2006) .............................7

*Wal-Mart Stores, Inc. v. Dukes,*
    131 S. Ct. 2541 (2011) ............................................................................7

*Wolfkiel v. Intersections Ins. Servs., Inc.,*
    303 F.R.D. 287 (N.D. Ill. 2014) .............................................................13

**Federal Statutes**

15 U.S.C. § 1692d........................................................................... *passim*

15 U.S.C. § 1692k(a)(1)......................................................................17

47 U.S.C. § 227 .............................................................................. *passim*

**Federal Rules**

Federal Rule of Civil Procedure 12 ................................................... *passim*

Federal Rule of Civil Procedure 23 ................................................... *passim*

Federal Rule of Civil Procedure 26(b)(1) ...............................................6

**Other Authorities**

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Am.*,
  30 F.C.C. Rcd. 7961 (July 10, 2015) ..........................................................................3

## I.      NATURE AND STAGE OF PROCEEDINGS

On March 13, 2019, Plaintiffs Maria Cuellar and Emma Stewart, on behalf of themselves and two putative classes ("Plaintiffs"), filed a Class Action Complaint (the "Complaint"), alleging that Defendant Allied Interstate, LLC ("Allied") violated section 227(b)(1)(A)(iii) of the Telephone Consumer Protection Act ("TCPA") and section 1692d of the Fair Debt Collection Practices Act ("FDCPA").

On April 5, 2019, Allied filed an Unopposed Motion for Extension of Time to Respond to Plaintiffs' Original Complaint, seeking to extend the deadline for Allied to move, plead, or otherwise respond to Plaintiffs' Complaint until May 8, 2019.  [D. 7].  The Court granted the motion on April 15, 2019.  [D. 11].

Allied files this Motion to Strike Class Allegations in the alternative to its concurrently filed Motion to Dismiss under Rule 12(b)(6), Motion to Dismiss under Rule 12(b)(2), and Motion to Stay.  In addition, Allied has filed a Motion to Stay Discovery pending the Court's resolution of its Motions to Dismiss.

## II.     STATEMENT OF THE ISSUES

1.    Whether the Court should strike Plaintiffs' class definitions and allegations on the grounds that both Plaintiffs' proposed TCPA class and FDCPA class are plainly uncertifiable under Federal Rule of Civil Procedure 23 based on the face of the Complaint.

## III.    SUMMARY OF THE ARGUMENT

Plaintiffs allege that Allied violated the TCPA and the FDCPA by placing calls to their cellular telephones using an automated telephone dialing system ("ATDS") or an artificial or prerecorded voice for purposes of collecting debt even after Plaintiffs revoked consent to be contacted.  Plaintiffs are current or former customers of Synchrony Bank, and Allied is a debt collector.  Complaint ¶¶ 12-13, 16.  The Complaint alleges that Plaintiff Maria Cuellar called

Allied and requested that it stop calling her cell phone number (832) XXX-8050. *Id.* ¶ 17. Allied allegedly acknowledged Plaintiff's request, identified an outstanding balance on her Walmart credit card, and confirmed that a note would be placed on her account indicating that Allied would no longer call her and that she would no longer receive calls from Allied. *Id.* ¶ 18. Similarly, the Complaint alleges that Plaintiff Emma Stewart called Allied and requested that it stop calling her cell phone number (713) XXX-7271. *Id.* ¶ 20. Again, Allied allegedly acknowledged Plaintiff's request, identified an outstanding balance on her Walmart credit card, and confirmed that her cell phone number would be removed from her account and that she would no longer receive calls from Allied. *Id.* ¶ 21.

Plaintiffs contend that they nevertheless continued to receive calls from Allied. *Id.* ¶¶ 19, 22. Plaintiffs vaguely and conclusively alleges, "[u]pon information and belief," that Allied used an ATDS to make the calls based on the "frequency, number, nature, and character of the calls at issue." *Id.* ¶ 23. In alleging violations of the TCPA and the FDCPA, Plaintiffs purport to bring a nationwide class of individuals consisting of: "all persons and entities throughout the United States (1) to whom Allied Interstate, LLC, placed, or caused to be placed, one or more calls, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system or artificial or prerecorded voice, (4) within four years preceding the date of this complaint through the date of class certification, (5) after the called party instructed Allied Interstate, LLC to cease calling his or her cellular telephone number;" and "all persons throughout the United States (1) to whom Allied Interstate, LLC placed, or caused to be placed, one or more calls, (2) within the one year preceding the date of this complaint through the date of class certification, (3) and in connection with the collection of a consumer debt, (4) after the called party instructed Allied Interstate, LLC to stop placing calls to his or her telephone number.

On its face, however, the Complaint demonstrates that Plaintiff cannot meet the class action certification requirements of Federal Rule of Civil Procedure 23.

As an initial matter, common questions of law and fact do not predominate, as Plaintiffs contend.  In order to effectively revoke consent under the TCPA, a party must "clearly express[ ] a desire not to receive further messages."  *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Am.*, 30 F.C.C. Rcd. 7961, 7996, ¶ 63 (July 10, 2015). Determining whether Plaintiffs or the putative class members effectively revoked consent to be contacted by Allied in the future requires the Court to consider the individual facts and circumstances surrounding each class member's expression of revocation to Allied.  Therefore, common issues cannot predominate Plaintiffs' TCPA claims.

Plaintiffs' proposed FDCPA class likewise fails Rule 23(b)(3)'s predominance requirement, because Plaintiffs' FDCPA claims are dependent on individualized proof. Specifically, Plaintiffs must prove that Allied placed calls to them "with the <u>intent</u> to annoy, abuse, or harass."  *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 725 (S.D. Tex. 2011) (emphasis added). However, whether Allied's intent was to annoy, abuse, or harass can only be determined on a case-by-case basis and requires the Court to consider, among other things, the timing and frequency of Allied's calls to each putative class member.  Such a dispositive issue is not subject to generalized proof, and therefore, common issues cannot predominate Plaintiffs' FDCPA claims.

In addition, while Plaintiffs allege that Allied "acted or refused to act on grounds generally applicable to the members of the classes, making final declaratory or injunctive relief appropriate," Complaint ¶ 63, neither the TCPA class nor the FDCPA class can be certified under Rule 23(b)(2). For a class to be certified under Rule 23(b)(2), the primary relief sought must be injunctive or declaratory relief.  *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 411 (5th Cir. 1998).  In the

3

Complaint, Plaintiffs primarily seek monetary damages, and therefore, certification under Rule 23(b)(2) is improper. *See* Complaint ¶¶ 69(f), (g). For each of these reasons, if the Court does not grant the contemporaneously filed Motion to Dismiss, it should at least strike the class allegations.

## IV.    PLAINTIFFS' ALLEGATIONS

Allied is in the debt-collection business. Complaint ¶ 12-13. Plaintiffs Maria Cuellar and Emma Stewart are current or former customers of Synchrony Bank. *Id.* ¶ 16. Plaintiffs' Complaint alleges that Plaintiff Maria Cuellar called Allied and requested that it stop calling her cell phone number (832) XXX-8050. *Id.* ¶ 17. Allied allegedly acknowledged Plaintiff's request, identified an outstanding balance on her Walmart credit card, and confirmed that a note would be placed on her account indicating that Allied would no longer call her and that she would no longer receive calls from Allied. *Id.* ¶ 18. Similarly, the Complaint alleges that Plaintiff Emma Stewart called Allied and requested that it stop calling her cell phone number (713) XXX-7271. *Id.* ¶ 20. Again, Allied allegedly acknowledged Plaintiff's request, identified an outstanding balance on her Walmart credit card, and confirmed that her cell phone number would be removed from her account and that she would no longer receive calls from Allied. *Id.* ¶ 21.

Plaintiffs contend that they nevertheless continued to receive calls from Allied. *Id.* ¶ 19, 22. Plaintiff Maria Cuellar alleges that she received over 80 additional calls from Allied after having requested that it stop contacting her. *Id.* ¶ 19. Likewise, Plaintiff Emma Stewart claims to have received over 70 additional calls from Allied after having requested that it stop contacting her cell phone, some of which were placed with an artificial or prerecorded voice. *Id.* ¶ 22.

Plaintiffs allege that "[u]pon information and good faith belief, and in light of the frequency, number, nature, and character of the calls at issue, [Allied] placed its calls to Plaintiffs' cellular telephone numbers by using an automatic telephone dialing system." *Id.* ¶ 23.

4

Based on these allegations, Plaintiffs allege violations of the TCPA (*Id.* ¶¶ 64-66) and the FDCPA (*Id.* ¶¶ 67-69) on behalf of itself and two putative classes:

> *TCPA Class*:  All persons and entities throughout the United States (1) to whom Allied Interstate, LLC, placed, or caused to be placed, one or more calls, (2) directed to a number assigned to a cellular telephone service, (3) by using an automatic telephone dialing system or artificial or prerecorded voice, (4) within four years preceding the date of this complaint through the date of class certification, (5) after the called party instructed Allied Interstate, LLC to cease calling his or her cellular telephone number.
>
> *FDCPA Class*:  All persons throughout the United States (1) to whom Allied Interstate, LLC placed, or caused to be placed, one or more calls, (2) within the one year preceding the date of this complaint through the date of class certification, (3) and in connection with the collection of a consumer debt, (4) after the called party instructed Allied Interstate, LLC to stop placing calls to his or her telephone number.

*Id*. ¶ 33, hereinafter referred to as "TCPA Class" and "FDCPA Class", respectively.

## V.    ARGUMENT

### A.    Legal Standard

A court should address whether to certify a purported class "[a]t an early practicable time," and if a court determines that the prerequisites of Rule 23 cannot be satisfied, it may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  FED. R. CIV. P. 23(c)(1)(A), (d)(1)(D).  While in some instances discovery may be needed to aid in the determination of whether a class action is appropriate, "[s]ometimes the issues are plain enough from the pleadings" to determine that a case should not proceed as a class action."  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see also John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d 443, 445 (5th Cir. 2007) ("Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings.").

Federal Rule of Civil Procedure 12(f) provides that a "court may strike from a pleading …

any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). "The

essential function of a Rule 12(f) motion is to avoid the expenditure of time and money that must

[arise] from litigating spurious issues by dispensing with those issues prior to trial." *Solomon v.*

*Lincoln Nat'l Corp.*, No. 4:15-CV-02340, 2015 U.S. Dist. LEXIS 182869, at \*11 (S.D. Tex. Nov.

12, 2015) (internal quotation marks and citation omitted). A motion to strike is particularly

appropriate at the pleadings stage when it is facially uncertifiable. *See Rosa v. Am. Water Heater*

*Co.*, 177 F. Supp. 3d 1025, 1042 (S.D. Tex. 2016) ("Where it is facially apparent from the

pleadings that there is no ascertainable class, a district court may dismiss the class allegation on

the pleadings") (citation omitted); *Reedy v. Phillips 66 Co.*, No. H-17-2914, 2018 U.S. Dist. LEXIS

45231, at \*30 (S.D. Tex. Mar. 20, 2018) ("[D]istrict courts may evaluate the sufficiency of class

allegations at the pleading stage").

Allowing a facially uncertifiable class to proceed beyond the pleading stage can result in

significant prejudice to a defendant. The pleadings, including allegations of the complaint, govern

the scope of discovery. *See* FED. R. CIV. P. 26(b)(1). Thus, in a TCPA case, permitting a facially

uncertifiable class to proceed to discovery can result in a defendant being required to respond to

burdensome and expensive discovery regarding every call it made during the class period on the

grounds that each call could potentially be a TCPA violation, even though the class was

uncertifiable to start. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558-59 (2006) (emphasizing

the expense and burden of discovery in class actions and stressing that neither "careful case

management," nor "careful scrutiny of the evidence at the summary judgment state," will protect

defendants from incurring enormous discovery costs); *Alabama Farm Bureau Mut. Casualty Co.*

*v. American Fidelity Life Ins. Co.*, 606 F.2d 602, 617 (5th Cir. 1979) (recognizing that the mere threat of discovery may cause substantial expenses for defendants, particularly in class actions).

**B.**     **Plaintiffs Pleaded Class Definitions Facially Do Not Satisfy the Requirements of Rule 23(b).**

The Court may certify a class only if Plaintiff satisfies all of the requirements of Federal Rule of Civil Procedure 23(a) and at least one requirement of Rule 23(b).  FED. R. CIV. P. 23; *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011).  "Failure to establish any one of the [Rule 23] requirements precludes class certification."  *Villagran v. Cent. Ford, Inc.*, No. H-05-2685, 2006 U.S. Dist. LEXIS 84148, at *15 (S.D. Tex. Nov. 20, 2006).

Rule 23(a) provides that a court may certify a class only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a).  "In addition to the four explicit prerequisites of Rule 23(a), courts have read an 'implied requirement of ascertainability' into Rule 23(a)."  *In re Oil Spill*, 295 F.R.D. 112, 133 (E.D. La. 2013) (citation omitted).

Plaintiffs allege that class certification is appropriate under Rules 23(b)(1), (b)(2), or (b)(3). Complaint ¶¶ 53-63.  Accordingly, Plaintiff must demonstrate that:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

FED. R. CIV. P. 23(b).

Here, the allegations of the Complaint make plain that Plaintiff cannot satisfy the requirements of Rule 23.

> **1.    Common Issues of Fact Cannot Predominate the Putative Classes Because Whether a Called Party Revoked Consent is an Individualized, Fact-Intensive Inquiry.**

When individualized issues predominate over common questions, class treatment is inappropriate. FED. R. CIV. P. 23(a)(2), (b)(3); *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997). To qualify for certification under Rule 23(b)(3), a class must meet two requirements in addition to the requirements of Rule 23(a): "Common questions must predominate over any questions affecting only individual members[,] and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods*, 521 U.S. at 615; FED. R. CIV. P. 23(a)(2), (b)(3). In order to satisfy Rule 23(b)(3)'s predominance requirement, "plaintiff must establish that issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over issues that are subject only to individualized proof." *Shular v. LVNV Funding LLC*, No. H-14-3053, 2016 U.S. Dist. LEXIS 19510, at \*35 (S.D. Tex. Feb. 18, 2016) (citing *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 419, 425 (5th Cir. 1998); *Castano v. American Tobacco Co*., 84 F.3d 734, 741 (5th Cir. 1996)). Rule 23(b)(3)'s predominance requirement is "more stringent" and "far more demanding" than the

commonality requirement of Rule 23(a). *Amchem Prods.*, 521 U.S. at 624. In determining the predominance requirement, courts consider "how a trial on the merits would be conducted if a class were certified." *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) (citation omitted). "This, in turn, entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Id.* (internal quotation marks and citation omitted).

Based upon the Complaint's allegations, there is no plausible basis to conclude that the issues of consent, revocation, and intent are subject to generalized proof across either the TCPA or FDCPA class. Accordingly, the Court should strike the class allegations for both the TCPA and FDCPA classes.

### a.    The TCPA Class

Common issues of fact do not predominate across Plaintiffs' proposed TCPA class for two reasons: (1) whether each potential class member did in fact revoke his or her prior consent at the relevant time would require the Court to conduct specific inquiries for each individual, devolving into mini-trials on the issue of consent and revocation; (2) the purported class definition is not based on objective criteria because whether a call is made using an ATDS is a merits issue and the identity of the "called party" is impermissibly vague for class membership.

### i.    Revocation of Consent is a Fact-Intensive Inquiry.

On the issue of revocation, Plaintiffs purport to represent a putative class of consumers who received calls from Allied after instructing it to stop calling, Complaint ¶ 33, but the allegations do not distinguish between consumers who never consented to receive calls and consumers who provided consent and then requested to stop receiving calls.

9

Consent can only be revoked effectively by way of a "clear expression" that calls should stop.  2015 FCC Order, 30 FCC Rccd. 7961, 8001, ¶ 63 (2015).  "Express and clear revocation of consent [for TCPA purposes is required]; implicit revocation will not do."  *In re Runyan*, 530 B.R. 801, 807 (M.D. Fla. 2015); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) (called party must "clearly express desire not to receive further []messages").  In defining "express consent," the Ninth Circuit has held that the consent must be "clearly and unmistakingly stated."  *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 955 (9th Cir. 2009). Since revocation must also be "express," courts have applied a similarly high standard to assessing revocation.  *See Johnston v. USAA Fed. Sav. Bank*, No. 12-CV-02486-LTB-KLM, 2014 U.S. Dist. LEXIS 152408, at *13 (D. Colo. 2014) (non-specific request to "stop calling" insufficient to justify judgment at MSJ phase); *Herrera v. First Nat'l Bank of Omaha, No.* 2:17-cv-01136-RSWL-SKA, 2017 U.S. Dist. LEXIS 200103, at *9 (C.D. Cal. Dec. 4, 2017) (question of fact on revocation existed when customer said "stop calling me"); *and see Buchholz v. Valarity, LLC*, No. 4:13-cv-0362 TIA, 2015 U.S. Dist. LEXIS 16490, at *3-5 (E.D. Mo. Feb. 11, 2015) (question of fact whether phrase "stop calling me" was sufficient to revoke consent since the recipient of the call did not identify himself).  However, whether an expression of revocation is sufficiently "express" necessarily depends on the facts and circumstances surrounding that expression, and is therefore not subject to generalized proof.

Indeed, courts have consistently held that whether an instruction to "stop calling" revokes consent to be contacted under the TCPA depends on the surrounding circumstances of the communication.  *See Singer v. Las Vegas Ath. Clubs*, No. 2:17-cv-01115-GMN-VCF, 2019 U.S. Dist. LEXIS 48838, at *22-24 (D. Nev. Mar. 25, 2019) (finding a factual issue with regard to whether plaintiff revoked his consent to be called where plaintiff stated "I want you guys to stop

calling me," but the parties' subsequent discussion could reasonably be interpreted as an agreement to temporarily suspend or "push out" the calls to allow plaintiff to come up with his payment); *Michel v. Credit Prot. Ass'n L.P.,* No. 14-cv-8452, 2017 U.S. Dist. LEXIS 134767, at *9 (N.D. Ill. Aug. 23, 2017) (finding that plaintiff's implicit revocation of consent was not effective revocation); *Johnston,* 2014 U.S. Dist. LEXIS 152408, at *13; *Herrera,* 2017 U.S. Dist. LEXIS 200103, at *9; *Buchholz,* 2015 U.S. Dist. LEXIS 16490, at *3-5.

Courts have likewise held that an instruction to stop calling may not necessarily revoke consent as to all of the called party's accounts. *See Michel*, 2017 U.S. Dist. LEXIS 134767, at *8-10 (holding that when plaintiff instructed defendant to stop calling him, he revoked consent to be contacted by defendant regarding one account, but not another).

Further, determining whether members of the proposed class effectively revoked consent requires the Court to consider the terms of any contracts between the individual members and Allied that impose limitations on the manner in which consent may be revoked.[1] *See Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 53, 57 (2d Cir. 2017) (holding that defendant did not violate the TCPA by calling plaintiff even after plaintiff verbally instructed it to stop calling, because plaintiff provided contractual consent to be contacted, which could not be unilaterally revoked or modified); *Medley v. Dish Network*, Case No. 8:16-cv-2534, 2018 U.S. Dist. LEXIS 144895 at *36 (M.D. Fla. August 27, 2018) (holding that "in the absence of a statement by Congress that the TCPA alters the common-law notion that consent cannot be unilaterally revoked where given as part of a bargained-for contract, the Court will decline to do so.").

---

1 Although the D.C. Circuit in *ACA Int'l v. FCC* upheld the FCC's conclusion that a called party may revoke consent through "any reasonable means—orally or in writing—that clearly expresses a desire not to receive further messages," it emphasized that "[t]he Commission correctly concedes, however, that the ruling did not address whether contracting parties can select a particular revocation procedure by mutual agreement." 885 F.3d 687, 709, 710 (D.C. Cir. 2018) (citation and internal quotation marks omitted).

Plaintiffs' Complaint neither disclaims the existence of any such contracts between the parties, nor does it indicate that the same contract governs Allied's relationship with every proposed class member. Plaintiffs likewise do not allege that all proposed class members attempted to revoke consent to be contacted in the same manner by uttering the same expression. Thus, whether Allied violated the TCPA by allegedly calling Plaintiffs and the proposed class members after having been instructed to stop necessarily requires the Court to consider (1) the facts and circumstances surrounding <u>each</u> individual class member's expression of revocation to determine if it was sufficiently "express" to revoke consent to be contacted by Allied, and (2) the terms of any contracts between Allied or the creditors and each individual class member that may contractually limit the manner in which consent may be revoked. Because both inquiries are unique to each proposed class member's relationship and interactions with Allied, the issue of revocation of consent is not subject to generalized proof. Therefore, common issues cannot predominate across Plaintiffs' proposed TCPA class.

To be sure, several district courts have stricken such "revocation" classes from complaints or denied class certification entirely because the Court would have to conduct class-member-specific inquiries for each individual. *See, e.g.*, *Cholly v. Uptain Grp., Inc.*, No. 15 C 5030, 2017 U.S. Dist. LEXIS 14449, at *4 (N.D. Ill. Feb. 1, 2017) ("[I]ndividual inquiries necessary to determine class membership will 'inevitably predominate' over any common questions of fact. Consequently, the proposed revocation class fails to satisfy Rule 23(b)(3) and the class allegations are stricken." (citation omitted)); *Saulsberry v. Meridian Fin. Servs., Inc.*, No. CV 14-6256 JGB, 2016 U.S. Dist. LEXIS 86419, at *11 (C.D. Cal. April 14, 2016) ("Each of these forms of revocation of consent may give rise to its own evidentiary issues, rendering it difficult for the Court to resolve any questions on a class-wide basis. . . . The commonality requirement is therefore not

met with regards to the TCPA Revocation Class."); *Wolfkiel v. Intersections Ins. Servs., Inc.*, 303 F.R.D. 287, 293 (N.D. Ill. 2014) ("The Revocation Class fails to satisfy the predominance requirement. In order to determine whether each potential class member did in fact revoke his or her prior consent at the pertinent time, the Court would have to conduct class-member-specific inquiries for each individual.").

In the context of TCPA class actions, "plaintiffs must advance a viable theory employing generalized proof to establish liability with respect to the class involved . . . [and] district courts must only certify class actions filed under the TCPA when such theory has been advanced." *Gene & Gene LLC*, 541 F.3d at 328.  Based upon the Complaint's allegations, there is no plausible basis to conclude that the issue of consent and revocation of consent are subject to generalized proof across the class, or that the class definition is sufficiently based on objective criteria.  Thus, the Court should strike the TCPA class allegations.

<b>ii.       The TCPA Class is Not Based on Objective Criteria.</b>

What is more, Plaintiffs' proposed TCPA class must also be stricken because it fails to meet Rule 23(a)'s ascertainability requirement, because its members cannot be identified by reference to objective criteria.  "The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23[a]." *John v. Nat'l Sec. Fire & Cas. Co.*, 501 F.3d at 445.  "Where it is facially apparent from the pleadings that there is no ascertainable class, a district court may dismiss the class allegation on the pleadings." *Shular*, 2016 U.S. Dist. LEXIS 19510, at *25.  "An identifiable class exists if its members can be ascertained by reference to objective criteria (ascertainability)." *Id.* (citation omitted).

Here, Plaintiffs purport to represent a class of members to whom Allied allegedly placed calls using an ATDS or artificial or prerecorded voice after the "called party" instructed Allied to stop calling.  Complaint ¶ 33.  However, the identity of the called party is vague and not ascertainable by reference to objective criteria, because the putative class does not limit membership to individuals authorized to consent or revoke consent to be called under the TCPA.  Instead, it includes any individual who received a call from Allied, regardless of whether he or she had any affiliation with the phone number dialed by Allied.  *See Jara v. GC Servs.*, No. 2:17-cv-04598-ODW-RAO, 2018 U.S. Dist. LEXIS 83522, at *13 (C.D. Cal. May 17, 2018) (noting that a spouse may provide or revoke consent to be contacted due to "common authority" over the phone).  Indeed, as written, Plaintiffs' proposed class includes thieves who were in possession of a stolen phone at the time Allied allegedly placed calls to the number associated with the stolen phone.  Simply put, Plaintiffs' Complaint fails to make a threshold showing that the absent class members are proper parties to the dispute.  Accordingly, Plaintiffs' proposed TCPA class cannot be ascertained by reference to objective criteria, and should therefore be stricken.

Further, whether Allied used "an automatic telephone dialing system or artificial or prerecorded voice" in placing its calls to Plaintiffs and the putative class members is a substantive issue to be determined on the merits.  That is, it is impossible to identify the proper members of Plaintiffs' proposed TCPA class without first resolving the threshold question of Allied's liability under the TCPA.  Such a class is not ascertainable by reference to objective criteria, and therefore fails Rule 23(a)'s ascertainability requirement.

### b.     The FDCPA Class

Similarly, common issues do not predominate Plaintiffs' proposed FDCPA class.  Although the Complaint generally alleges that Allied violated section 1692d of the FDCPA, the

factual allegations make clear that Plaintiffs assert claims under section 1692d(5).[2]  *See, e.g.,* Complaint ¶¶ 19, 22, 43, 68.  "In order to establish that a debt collector violated subsection (5) [of section 1692d of the FDCPA], a plaintiff must be able to show that the repeated calls were made <u>with the intent</u> to annoy, abuse, or harass."  *Lee*, 846 F. Supp. 2d at 725 (emphasis).

Here, it is apparent that common issues of fact cannot predominate across Plaintiffs' proposed FDCPA class, because the Complaint's allegations are insufficient to establish Allied's intent to annoy, abuse, or harass the class members.  Although Plaintiffs' Complaint alleges that Allied continued to call Plaintiffs after it was aware that it was calling the wrong numbers, Complaint ¶ 68, the allegations are insufficient to establish whether or how Allied intended to harass the other putative class members.  Indeed, the FDCPA Class encompasses every consumer who received a collection call from Allied after he or she instructed Allied to stop calling, and is not limited to those who informed Allied that it was calling the wrong number.  *Id.* ¶ 33.  Nor does the Complaint contain allegations that all proposed class members experienced similar annoying, harassing, or abusive communications from Allied.

Further, at least one district court has held that such claims fail to meet the predominance requirements of Rule 23(b)(3).  *See O'Donovan v. Cashcall, Inc.*, 278 F.R.D. 479, 498-99 (N.D.

---

2 Section 1692d of the FDCPA identifies six categories of prohibited conduct:
    (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
    (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
    (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 1681a(f) or 1681b(3) of this title;
    (4) The advertisement for sale of any debt to coerce payment of the debt;
    (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;
    (6) Except as provided in section 1692b of this title, the placement of telephone calls without meaningful disclosure of the caller's identity.
Plaintiffs only allege that Allied continued placing calls to Plaintiffs' cell phones after having been instructed to stop. Therefore, their claims fall under subsection (5) of section 1692d of the FDCPA.

Cal. 2011).  In holding that common issues did not predominate based on plaintiffs' claims that

defendant's use of an ATDS to place collection calls violated the FDCPA, the court stated:

> The Court has carefully considered the parties' arguments and
> agrees with [defendant] that individual issues dominate this claim.
> In particular, the frequency of calls is not uniform among the
> Plaintiffs or potential class members and the issue of whether the
> phone calls were harassing, annoying, or abusive requires an
> individualized analysis.  Thus, Plaintiffs have failed to meet the
> 23(b)(3) predominance requirement as to this claim.

*Id*.

Here, Plaintiffs' claims are no different.  Plaintiffs do not allege, for example, that Allied

routinely called the proposed class members late at night, or multiple times a day.  Therefore, to

determine whether Allied violated the FDCPA by placing collection calls to Plaintiffs and the

members of the proposed FDCPA class, the Court would be required to conduct an individualized

analysis of Allied's communications with each individual class member.  Based on the allegations

in Plaintiffs' Complaint, there is no plausible basis for concluding that Allied's intent in calling

the proposed class members is subject to common issues of fact.  Accordingly, Plaintiffs' proposed

FDCPA class fails to satisfy Rule 23(b)(3)'s predominance requirement.

### 2.    Neither the TCPA Class nor the FDCPA Class Can Be Certified Under Rule 23(b)(2), Because the Primary Relief Sought is Damages.

Neither the TCPA class nor the FDCPA class can be certified under Rule 23(b)(2), because

the primary relief sought is monetary.  Under Rule 23(b)(2), a class action may be maintained if

"the party opposing the class has acted or refused to act on grounds that apply generally to the

class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the

class as a whole."  FED. R. CIV. P. 23(b)(2).  For a class to be certifiable under Rule 23(b)(2), the

predominant relief sought must be injunctive or declaratory.  *Allison v. Citgo Petroleum Corp.*,

151 F.3d 402, 411 (5th Cir. 1998).  In order for injunctive or declaratory relief to be predominant,

monetary relief must be "incidental" to the requested injunctive or declaratory relief.  *Id*. at 415.

"Incidental damages are those that "flow directly from liability to the class *as a whole* on the claims

forming the basis of the injunctive or declaratory relief."  *Id*. (emphasis in original).  "Ideally,

incidental damages should be only those to which class members automatically would be entitled

once liability to the class (or subclass) as a whole is established."  *Id*.  "Moreover, such damages

should be at least capable of computation by means of objective standards and not dependent in

any significant way on the intangible, subjective differences of each class member's

circumstances."  *Id*.

Courts have held that "[a] TCPA plaintiff who seeks an award of statutory damages for

each alleged TCPA violation is primarily interested in monetary damages."  *McCurley v. Royal

Seas Cruises, Inc.*, No. 17-cv-00986-BAS-AGS, 2019 U.S. Dist. LEXIS 52173, at *85-86 (S.D.

Cal. Mar. 27, 2019) (citation omitted); *see also Connelly v. Hilton Grand Vacations Co., LLC*, 294

F.R.D. 574, 579 (S.D. Cal. 2013) (holding that plaintiffs seeking damages under the TCPA for

each unlawful call were ineligible for Rule 23(b)(2) certification, "regardless of Plaintiffs' parallel

request for injunctive relief.").  Here, Plaintiffs and the putative class members seek monetary

relief under 47 U.S.C. § 227(b)(3)(B) and 15 U.S.C. § 1692k(a)(1).  Complaint ¶¶ 69(f), (g).

Section 227(b)(3)(B) of the TCPA permits each individual injured by a TCPA violation to recover

damages for the greater of "actual monetary loss from such violation," or "$500 in damages for

*each* such violation[.]"  47 U.S.C. § 227(b)(3)(B) (emphasis added).  Because Plaintiffs seek

monetary damages for each alleged violation of the TCPA, their request for injunctive relief is not

predominant.

In addition, to be certifiable under Rule 23(b)(2), the proposed class must be a

"homogenous and cohesive group with few conflicting interests among its members."  *Allison*,

17

151 F.3d at 413; *see also Conrad v. GMAC*, 283 F.R.D. 326, 329 (N.D. Tex. 2012) ("[U]nder Rule 23(b)(2), a Court must determine whether a class is sufficiently cohesive so that examination of the particular circumstances of each member of the class is unnecessary"). As explained above, *supra* section V.C.1.a., the proposed TCPA class lacks sufficient cohesiveness, as individual issues regarding revocation of consent predominate over common issues. Accordingly, the TCPA class cannot be certified under Rule 23(b)(2).

The FDCPA class is likewise uncertifiable under Rule 23(b)(2), because the appropriate relief under the FDCPA is money damages, not injunctive relief. In fact, "[t]he FDCPA does not provide for injunctive relief." *Martinez v. Scott*, No. H-10-1619, 2011 U.S. Dist. LEXIS 90630, at *13 (S.D. Tex. Aug. 12, 2011) (citations omitted); *Hicks v. Client Servs.*, No. 07-61822, 2008 U.S. Dist. LEXIS 101129, at *27 (S.D. Fla. Dec. 10, 2008) ("[T]he FDCPA specifically provide[s] for money damages as the appropriate relief, but does not specifically provide for injunctive relief.") (citation and internal quotation marks omitted).

Because the relief afforded under the FDCPA is monetary and not injunctive, Plaintiffs' FDCPA class cannot be certified under Rule 23(b)(2). *See Sibley v. Diversified Collection Servs.*, No. 3:96-CV-0816-D, 1998 U.S. Dist. LEXIS 9969, at *14 (N.D. Tex. June 30, 1998) (denying motion to certify a FDCPA class under Rule 23(b)(2) because "[t]he FDCPA does not afford plaintiffs with injunctive relief[.]"); *Hicks*, 2008 U.S. Dist. LEXIS 101129, at *27 ("Therefore, an appropriate relief for an FDCPA action is monetary damages, and a Rule 23(b)(2) action and hybrid class action would be improper.").

### 3. Certification under Rule 23(b)(1) is Likewise Improper, Because Plaintiffs' Claims for Damages Do Not Impact the Claims of Others.

Both Plaintiffs' proposed TCPA class and FDCPA class cannot be certified under Rule 23(b)(1)(A), because, as shown above, *supra* section V.C.2., Plaintiffs predominantly seek

monetary relief.  Certification under Rule 23(b)(1)(A) is appropriate when separate actions by individual class members would create a risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class."  FED. R. CIV. P. 23(b)(1)(A).  "[C]ertification under (b)(1)(A) is seldom appropriate when dealing with monetary compensation because no inconsistency is created when courts award varying levels of money damages to different plaintiffs."  *Casa Orlando Apts., Ltd. v. Fannie Mae*, 624 F.3d 185, 197 (5th Cir. 2010); *see also Corley v. Entergy Corp.*, 222 F.R.D. 316, 322 (E.D. Tex. 2004) ("Class certification under Rule 23(b)(1)(A) is inappropriate if plaintiffs seek predominately monetary, not injunctive, relief.").  Because Plaintiffs' requested relief is predominantly money damages under both the TCPA and the FDCPA, there is no risk of incompatible standards of conduct for Allied.  Thus, certification under Rule 23(b)(1)(A) is improper.

### C.    The Court Should Not Wait Until the Certification Stage to Address These Issues.

Plaintiffs' proposed TCPA and FDCPA classes could never be certified as defined.  The class is overly broad and vague, masking Plaintiffs' true certification theory to the detriment of Allied in this case.

Undoubtedly Plaintiffs will ask the Court to overlook these flaws and allow them to leverage the cumbersome machinery of class discovery without ever giving Allied a look at the true class they intend to represent.  Then—they will suggest—only at the time of class certification need they reveal their true intentions with respect to the scope of the class, affording Allied a limited opportunity to oppose the newly-crafted definition with no time for targeted discovery.

That is powerfully unfair and not the way class actions should work—even if there is some authority for allowing "moving target" class definitions in this district.  Allied has properly raised

19

valid challenges to the class definitions as pleaded and Plaintiffs should be called to task for their errant allegations here and now, rather than being afforded a free pass to the certification stage. *See* FED. R. CIV. P. 23(c)(1)(A); *Gen Tel. Co. of Sw.*, 457 U.S. at 160.

## VI.     CONCLUSION

For the foregoing reasons, Allied respectfully requests that the Court exercise its discretion to strike the class allegations from the Complaint.

DATED and FILED on May 8, 2019.

Respectfully submitted,

*/s/ Eric J. Troutman*
Eric J. Troutman, Attorney-In-Charge
Admitted *Pro Hac Vice*
SQUIRE PATTON BOGGS (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071
Telephone: (213) 689-6510
Facsimile: (213) 623-4581
E-Mail:  eric.troutman@squirepb.com

20

OF COUNSEL:

Petrina A. McDaniel
Admitted *Pro Hac Vice*
SQUIRE PATTON BOGGS (US) LLP
1230 Peachtree Street Northeast, Suite 1700
Atlanta, Georgia 30309
Telephone: (678) 272-3207
Facsimile: (678) 272-3211
E-Mail:  petrina.mcdaniel@squirepb.com


Shing C. Tse
Texas State Bar No. 24102582
S.D. No.  3123086
SQUIRE PATTON BOGGS (US) LLP
6200 Chase Tower
600 Travis Street
Houston, Texas  77002-3000
Telephone: (713) 546-5850
Facsimile: (713) 546-5830
E-Mail:  Shing.Tse@squirepb.com


ATTORNEYS FOR DEFENDANT
ALLIED INTERSTATE, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on May 8, 2019 I electronically filed the foregoing document with the Clerk of the Court using the ECF system for filing and served the following:

*Via ECF:*
Aaron D. Radbil
Greenwald Davidson Radbil PLLC
401 Congress Avenue, Suite 1540
Austin, Texas 78701

*Via ECF:*
Alexander D. Kruzyk
Greenwald Davidson Radbil PLLC
5550 Glades Road, Suite 500
Boca Raton, Florida 33431

*Attorneys for Plaintiff*

*/s/ Eric J. Troutman*
Eric J. Troutman

22